————o————

## No. 7013.

## W. R. BURK v. NATHAN ROSENBERG.

### Syllabus.

An architect who makes plans and specifications for another under the following agreement: "If you will give me an exact cost and plans subject to refusal without cost", is not entitled to compensation when his plans and specifications have been refused.

Appeal from the Civil District Court, Parish of Orleans, No. 114,758, Division "B"; Honorable Fred D. King, Judge. Affirmed.

E. M. Stafford and H. W. Robinson, for plaintiff and appellant.

J. C. Henriques, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

This is a suit for architect's fees.

Petitioner is an architect. He alleges than on or about June 1, 1915, the defendant made a verbal contract with him to draw plans and specifications for the alteration of a Picture Theatre building into a two-story double building; that no express price was stipulated, but that the customary price is six per cent of the cost price of the building to be erected; that he prepared the plans and specifications and delivered them to the defendant about July 30, 1915; that the plans provided for a building to cost $3,617.00, which entitles him to a compensation of $217.02, for which he claims judgment.

Defendant denied the allegations of each paragraph of the petition and specially denied any verbal contract, and averred, on the contrary, that his correspondence with plaintiff would show that the plans were to cost him nothing.

Before the trial of the case, the defendant died.

There was judgment for defendant, and plaintiff has appealed.

The negotiations between them began by the following letter:

"Friend Burk—I am seriously thinking of remodeling the Dorothea Theatre into a home for myself and if you will give me an exact cost and plans subject to refusal without cost I may carry out my

ideas. Let me hear from you at your earliest convenience, and you will oblige,

"Your friend,

(Signed) "NAT ROSENBERG.

At the bottom of the letter was a diagram above which were written the following words:

"This my idea of a floor plan of 7 room house."

Plaintiff testified that he made a sketch of "a one-story single residence"; but that defendant changed his mind as to what he wanted and asked for "new sketches for a double instead of a single house" which plaintiff also made;

> "at a later date defendant came in and changed his ideas and asked that I draw up a sketch then for a double two-story, which was put into the form of a sketch, * * * that sketch was accepted by Mr. Rosenberg and he requested that I then make up working drawings for a double two-story residence with specifications, and after several consultations, through which the drawings were being made, Mr. Rosenberg coming in on different occasions and consulting with myself and my draughtsman as the plans proceeded, Mr. Rosenberg asked that we get sub-estimates, and the condition being that we erect this as we did the picture show before that, on a sub-contract basis, and the architect would handle the sub-contract";

he delivered the blue prints to the defendant a day or two before June 30th, together with the specifications and a list of what the contracts were to run up to;

> "* * * later on Mr. Rosenberg came into the office and left word with my draughtsman that he was not going to build the place; that the affair had been postponed so long that it was past the season

326

for him to build, and that he had changed his mind, and after seeing he would not do anything in the matter at all about that time I sent him a bill; * * * I had a conversation with him (the defendant) when the working drawings of the two-story house were ordered, to the effect that the commission would be the same as that upon which the old theatre was built";

he further testifies that the defendant was in and out of his office almost daily during the preparation of the plans and specifications and receipt of bids from sub-contractors.

Frank Dupechou, a draughtsman in plaintiff's office, testifies, that defendant would

"come in the drawing room, walk around and look over the board, make suggestions, ask questions about them; he wanted to know when we were making the working drawings for the two-story double; he wanted to know exactly when the plans would be finished, and kept after me to rush them as he wanted to get figures on the different sub-contracts and start work as soon as possible. He also asked me to get what figures I could before the plans were completed, which I did."

He continues in his testimony and expatiates along the same lines. He was asked: "Did he (defendant) ever say or do anything which indicated that he didn't intend to pay for the plans for the double two-story building?" He answered, "Not that I know of." He evidently did not hear the conversation reported by defendant "that we erect this as we did the picture show before that on a sub-contract basis.

Defendant was dead at the time of the trial. Of course he was not heard as a witness, and his testimony had not

been taken before. But the correspondence between him and the plaintiff has survived him and speaks in more convincing tones than oral testimony.

It must be remembered that the defendant's original proposition was: "If you will give me an exact cost and plans subject to refusal without cost I may carry out my ideas." It is evident therefore that plaintiff's right of recovery depended upon defendant's accepting the plans and agreeing upon the cost of the building.

We believe the plaintiff was in error in interpreting defendant's acceptance of the sketch for a two-story house as an agreement to build. He had a right of refusal without cost, until he was informed of the cost of the building.

Plaintiff testifies that he delivered the blue prints with the specifications and a list of the bids for subcontracts to the defendant on or about June 30th. On July 2nd, 1915, the defendant wrote the following letter to the plaintiff:

> "Received specifications yesterday and they are just in every detail entirely opposite, as to my requests, both financially and as too mentioning things to be used of the Dorothea Theatre on the new structure. You also mentioned in these specifications that you are to handle any and all bids or contracts. I think I told you I wanted to sub-contract myself, but I would rather you attend to it at an even price. You will herewith find a list of a few things I'd suggest should be corrected in specifications. Kindly let me hear from you with all these matters straightened out and also to let me have a couple of copies of these new specifications as I am anxious to get away."

To this letter is annexed a whole page of typewritten matter containing objections and alterations to the specifications.

328

Far from being an acceptance, we perceive a very distinct rejection, of these plans and specifications.

On August 4th plaintiff wrote to the defendant:

"I will be pleased to have you call at my office at 2 P. M. Thursday, August 5, to discuss the matter of your plans."

The defendant called at the plaintiff's office in compliance with his request; but the plaintiff was not there. Defendant then left word with the plaintiff's draughtsman that he would not build.

Thereupon, on August 21 plaintiff sent to defendant the following bill:

Nat Rosenberg to
    William R. Burk, Architect, Dr.
July 30/15 To plans and specifications for the alteration of Picture Theatre Building to Two-Story Double Dwelling:
    6% of cost price $3,617.00.............$217.02

On August 23rd, 1915, Rosenberg answered the plaintiff's bill, as follows:

"Yours of recent date to hand, and in reply will state that I do not feel as if I am in your debt. If you will refer to our previous correspondence you will find that I distinctly explained that you could do this for me without cost. I also mentioned that if I should conclude to build that it had to be very little money, and I also told you that I wanted to build for a certain amount, which you assured me could be done, then you knew I wanted to build for this amount that I could rent for October 1, 1915, and again your specifications were such that they were of no use as you mentioned nothing whatsoever as to material that is in present structure. You wrote

329

me to call at your office on a certain date and hour, which I did, and you were not there, and I told your young man as you had failed to live up to all I asked and what was fully understood, and that it was so late for this year's renting, I concluded after considering how you had neglected me, that I could not go any further."

This letter Burk answered as follows:

"Your letter of August 23/15 rec'd and am very much surprised that you should feel that I could possibly conduct my business on a free basis. I have referred you to your correspondence of previous dates, and while your first letter with rough sketch attached does mention that you would like to have plans and exact cost without cost, this was merely in regards to first preliminary sketches which were made under these conditions and accepted by you, subsequently you instructed me to continue the work by making up working drawings and specifications and request bids on the work which was done by me to the best of my ability, and while there seemed to be some small misunderstanding in regards to the specifications (which could be readily corrected) the plans met with your approval in every respect, being made to suit your ideas. Under these conditions, and in justice to myself I cannot see how I can possibly look into this matter as you do, therefore I must request that you make some settlement of the matter in the next few days or I will be forced to protect myself through some other course."

This letter does not contain a word concerning a change of the original conditions, as to payment, under which the plaintiff was continuing to make plans for the defendant, nor any reference to a subsequent agreement as to the amount of compensation he would be entitled to from the defendant. The only protestation of plaintiff to defendant

330

was that he could not possibly conduct his business on a free basis, and that the drawings and specifications for the two-story building were entirely different from the preliminary sketches for the one-story cottage. We cannot so view it. The original terms of employment without cost were not changed and remained binding on the plaintiff. Plaintiff has not made his case certain and he cannot recover.

Plaintiff testified in open Court. The Judge below saw and heard him and decided against him; we cannot say that he was manifestly in error.

Judgment affirmed.